1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAMON WALKER, JR.,

        Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 2:22-cv-01871-EJY

**ORDER**

10

11

12

13

14

     Damon Walker, Jr. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner" or "Defendant") finding Plaintiff was not disabled under Title II and XVI of the Social Security Act. ECF No. 19. The Commissioner filed a Response and Cross-Motion to Affirm (ECF Nos. 21, 22), and Plaintiff filed a Reply (ECF No. 23).

15

**I.    Background**

16

17

18

19

20

21

22

23

24

     Plaintiff filed an application for disability benefits on January 18, 2018. Administrative Record ("AR") 342-345. The Social Security Administration denied Plaintiff's application initially and upon reconsideration after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 137-156. The ALJ held a hearing on June 13, 2019. AR 1675-1695. On July 25, 2019, the ALJ issued a decision finding Plaintiff was not disabled from his alleged onset date through the date of the decision. AR 111-123. On June 11, 2020, the Appeals Council vacated the July 25, 2019 decision and remanded the case back to an ALJ. AR 129-133.[1] The ALJ held another hearing on July 14, 2021. AR 1696-1712. On August 18, 2021, the ALJ issued a decision finding Plaintiff not disabled from his alleged onset date through the date of the decision. AR 9-24. Plaintiff

25

26

27

28

---

[1]    The case was remanded because (1) the hearing decision did not address whether the claimant's use of a cane was medically necessary and did not incorporate the cane usage into the residual functional capacity ("RFC"); and (2) and did not address the functional capacity evaluation opinion completed by Gabriel de Faria, physical therapist. AR 129-133. The ALJ was instructed to upon remand give further consideration to the medical source opinion(s) pursuant to the provisions of 20 CFR 404.1520c and 416.920c, as well as give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations. AR 132.

1

1    requested review of the ALJ's August 18, 2021 decision (AR 337-341), which was denied by the

2    Appeals Council on September 7, 2022 (AR 1-7).  Plaintiff now seeks judicial review of the

3    Commissioner's decision under 42 U.S.C. § 405(g).

4    **II.     Standard of Review**

5         The reviewing court shall affirm the Commissioner's decision if the decision is based on

6    correct legal standards and the legal findings are supported by substantial evidence in the record.  42

7    U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

8    Substantial evidence is "more than a mere scintilla," which means "such relevant evidence as a

9    reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141,

10   1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S. --, 139 S.Ct. 1148, 1154 (2019)).  In

11   reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports

12   and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th

13   Cir. 1986) (internal citations omitted).

14        "When the evidence before the ALJ is subject to more than one rational interpretation, …

15   [the court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*,

16   53 F.3d 1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an

17   agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc.*

18   *Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  And, a court may not

19   reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

20   2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls

21   upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

22   **III.    Establishing Disability Under the Act**

23        To establish whether a claimant is disabled under the Social Security Act, there must be

24   substantial evidence that:

25        1.  the claimant suffers from a medically determinable physical or mental impairment that
         can be expected to result in death or that has lasted or can be expected to last for a continuous
26       period of not less than twelve months; and

27        2.  the impairment renders the claimant incapable of performing the work that the claimant
         previously performed and incapable of performing any other substantial gainful employment
28       that exists in the national economy.

2

1   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant

2   meets both requirements, he or she is disabled."  *Id*. (internal quotations omitted).

3          The ALJ uses a five-step sequential evaluation process to determine whether a claimant is

4   disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §

5   404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-

6   disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180

7   F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520.  The claimant carries the burden of

8   proof at steps one through four, and the Commissioner carries the burden of proof at step five.

9   *Tackett*, 180 F.3d at 1098.

10         The five steps consider:

11         Step 1. Is the claimant presently working in a substantially gainful activity? If so,
           then the claimant is "not disabled" within the meaning of the Social Security Act
12         and is not entitled to disability insurance benefits.  If the claimant is not working
           in a substantially gainful activity, then the claimant's case cannot be resolved at
13         step one and the evaluation proceeds to step two.  20 C.F.R. § 404.1520(b).

14         Step 2. Is the claimant's impairment severe? If not, then the claimant is "not
           disabled" and is not entitled to disability insurance benefits.  If the claimant's
15         impairment is severe, then the claimant's case cannot be resolved at step two and
           the evaluation proceeds to step three.  20 C.F.R. § 404.1520(c).
16
           Step 3. Does the impairment "meet or equal" one of a list of specific impairments
17         described in the regulations? If so, the claimant is "disabled" and therefore
           entitled to disability insurance benefits.  If the claimant's impairment neither
18         meets nor equals one of the impairments listed in the regulations, then the
           claimant's case cannot be resolved at step three and the evaluation proceeds to
19         step four.  20 C.F.R. § 404.1520(d).

20         Step 4. Is the claimant able to do any work that he or she has done in the past? If
           so, then the claimant is "not disabled" and is not entitled to disability insurance
21         benefits.  If the claimant cannot do any work he or she did in the past, then the
           claimant's case cannot be resolved at step four and the evaluation proceeds to the
22         fifth and final step.  20 C.F.R. § 404.1520(e).

23         Step 5. Is the claimant able to do any other work? If not, then the claimant is
           "disabled" and therefore entitled to disability insurance benefits.  20 C.F.R. §
24         404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner
           must establish that there are a significant number of jobs in the national economy
25         that the claimant can do.  There are two ways for the Commissioner to meet the
           burden of showing that there is other work in "significant numbers" in the
26         national economy that claimant can do: (1) by the testimony of a vocational expert
           [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R.
27         pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is
           "not disabled" and therefore not entitled to disability insurance benefits.  20
28

C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden,
then the claimant is "disabled" and therefore entitled to disability benefits. *Id*.

**IV.    Summary of ALJ's Decision**

The ALJ applied the 5-step sequential analysis under 20 C.F.R. § 404.1520 and determined Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022.  AR 14.  The ALJ found Plaintiff had not engaged in substantial gainful activity since December 5, 2017, his alleged disability onset date (step one).  AR 14-15.  The ALJ determined Plaintiff has severe impairments of his left leg, knee, and hand injuries; depressive disorder; and anxiety disorder (step two).  AR 15.  The ALJ then concluded Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1 (step three).  AR 15-17.  The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: he could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) sit 6 hours in an 8-hour workday; (3) stand 6 hours in an 8-hour workday; (4) walk 6 hours in an 8-hour workday; (5) push/pull as much as he can lift/carry; (5) frequently handle and finger with the left (non-dominant) hand; (6) perform simple, routine tasks; and (7) make simple work related decisions.  AR 17-22.[2]   The ALJ concluded Plaintiff had no past relevant work.  AR 22.  On this basis, the ALJ concluded Plaintiff was not disabled (step five).  AR 23.

In reaching his conclusions, the ALJ considered Plaintiff's hearing testimony, Plaintiff's friend's lay opinion from February 2018, and medical opinions from Dr. Bonnie Kwok, physical therapist ("PT") Gabriel de Faria, state agency medical consultant Dr. Y. Ruo, and state agency medical consultant Dr. Lawrence Ligon.  AR 18-22.[3]  The ALJ found Dr. Kwok's, Dr. Ruo's, and Dr. Ligon's opinions unpersuasive; PT de Faria's opinion "not fully persuasive"; and Plaintiff's and his friend's assertions persuasive "only to the extent consistent with the residual functional capacity." *Id*.

---

[2]    The RFC is the most a claimant can still do in a work setting despite impairment related limitations and is based on all the evidence in the record.  20 C.F.R. § 404.1545(a)(1).

[3]    The ALJ also considered opinions from consultative examiner Dr. Aparna Dixit, state agency medical consultant Dr. C. Lawrence, and state agency medical consultant Dr. N. Haroun regarding Plaintiff's alleged mental impairment.  AR 21-22.  The ALJ's analysis of these opinions is not at issue; hence, the Court does not discuss them.

1   **V.      Discussion**

2          A.      <u>The ALJ Improperly Rejected Dr. Kwok's, PT de Faria's, Dr. Ruo's, and Dr. Ligon's</u>

3                  <u>medical opinions</u>.

4          Social Security regulations establish the required method for assessing differing medical

5   opinions.  An ALJ is not required to "articulate in each determination or decision how [he]

6   considered all of the factors for all of the medical opinions and prior administrative findings" in a

7   plaintiff's case record.  20 C.F.R. § 416.920c(b)(1).  Rather, the ALJ "will articulate how [he]

8   considered the medical opinions or prior medical finding(s) from that medical source together in a

9   single analysis."  20 C.F.R. § 416.920c(b)(2).  The ALJ must consider each medical opinion and

10  prior administrative finding to determine persuasiveness by looking at supportability and

11  consistency, and then, only in some instances, at other factors found in 20 C.F.R. § 416.920c(b)(2).

12  Supportability means "[t]he more relevant the objective medical evidence and supporting

13  explanations presented by a medical source are to support his or her medical opinion(s) or prior

14  administrative medical finding(s), the more persuasive the medical opinions or prior administrative

15  medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  Consistency means "[t]he more consistent

16  a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

17  medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

18  prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).  An ALJ "will not

19  defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

20  or prior administrative medical finding(s)," including the claimant's medical sources.  20 C.F.R. §

21  416.920c(a).

22         Plaintiff contends the ALJ failed to provide legally sufficient explanations for supportability

23  and consistency for Dr. Kowk's, PT de Faria's, Dr. Ruo's, and Dr. Ligon's opinions.  ECF No. 19

24  at 8-18.  Defendant responds the ALJ reasonably concluded that Dr. Kwok's opinion was

25  unpersuasive because she identified no medical findings to support her opinion, her evaluation was

26  only a few months after Plaintiff's injury occurred, and her opinion was inconsistent with the rest of

27  the record.  ECF No. 21 at 5, 7-11.  Defendant argues the ALJ did not err in finding PT de Faria's

28  opinion "not fully persuasive" because his opinion was also rendered shortly after Plaintiff's injury

1    occurred, and was also inconsistent with the record.  *Id.* at 5-6, 12-14.  Defendant argues the ALJ

2    properly assessed Dr. Ruo's and Dr. Ligon's opinions as unpersuasive because their explanations

3    did not consider evidence showing significant improvement in Plaintiff's symptoms and were

4    inconsistent with such evidence.  *Id.* at 14-15.  In reply, Plaintiff argues the ALJ's analysis was

5    conclusory in nature, and Defendant's response inappropriately conducts a *post hoc* analysis of

6    evidence that was not articulated by the ALJ.  ECF No. 23 at 2-5.

7                   i.      *The ALJ did not adequately analyze consistency and supportability.*

8         "The ALJ must 'articulate … how persuasive [he] find[s] all of the medical opinions' and

9    'explain how [he] considered the supportability and consistency factors.'"  *Lorali N. T. v. Kijakazi*,

10   Case No. 4:22-CV-00234-CWD, 2023 WL 3548221, at *4 (D. Idaho May 18, 2023) (quoting 20

11   C.F.R. § 416.920c(b)).  "In sum, the Commissioner must explain [his] reasoning and specifically

12   address how [he] considered the supportability and consistency of the opinion."  *Id.* (quoting *Carmen*

13   *Claudia S. v. Saul*, Case No. CV 20-6918-KS, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021)).

14   "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so

15   that we may afford the claimant meaningful review of the SSA's ultimate findings."  *Tina L. R. v.*

16   *Kijakazi*, Case No. CV 21-3586 PVC, 2022 WL 6632198, at *4 (C.D. Cal. July 25, 2022) (quoting

17   *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)).  Additionally, the ALJ must

18   provide citations to the record because when he does not it "is inherently harmful in that it inhibits

19   a reviewing court's ability to determine whether substantial evidence supports the [residual

20   functional capacity] assessment."  *Winters v. Kijakazi*, Case No. CV-21-33-BU-BMM, 2022 WL

21   17600341, at *8 (D. Mont. Dec. 13, 2022).  *See also Tina L. R.*, 2022 WL 6632198, at *4 (finding

22   that when the ALJ does not provide citations to any medical records to support conclusions, the

23   ALJ's conclusion is not supported by substantial evidence).

24        Here, the ALJ provided some analysis regarding each medical opinion, but left unclear what

25   analysis pertains to which factor, if at all.  In fact, the words "supportability" and "consistency" do

26   not appear once throughout the entire opinion.  AR 12-24.  Thus, the ALJ failed to clearly state his

27   analysis of the supportability and consistency factors for any of the medical opinions he considered.

28   The ALJ also failed to include any citations to the record to support his conclusions regarding Dr.

1    Kwok's, PT de Faria's, Dr. Ruo's, or Dr. Ligon's opinions' persuasiveness. AR 20-21.  For example,

2    in evaluating Dr. Kwok's and PT de Faria's opinions, the ALJ found significant limitations may

3    have been appropriate during Plaintiff's rehabilitation, but not for any 12-month period.  AR 20 ("[a]

4    significant limitation on lifting/carrying may have been warranted during the rehabilitation period

5    but not for any relevant 12-month period.").  The ALJ provides no record citations to support this

6    conclusion.  The ALJ therefore failed to "build an accurate and logical bridge" from the evidence to

7    his conclusions, and failed to "provide sufficient reasoning that allows [for] review." *Lambert v.*

8    *Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).[4]  Indeed, in order to review the ALJ's findings as-is, the

9    Court would need to guess what analysis pertains to which factor, and further guess where in the

10   record the ALJ found evidence to support his findings.   The Ninth Circuit holds the Court is

11   "constrained to review the reasons the ALJ asserts."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494

12   (9th Cir. 2015) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  The information the

13   ALJ provides for the Court to review is incomplete making effective review impossible.  This, in

14   itself, is reason to remand for a new decision.

15                        ii.       *Some improvement does not indicate Plaintiff no longer disabled.*

16         Not only did the ALJ fail to adequately explain how he addressed supportability and

17   consistency, he also provided invalid rationale for rejecting the opinions.  "The mere occurrence of

18   'some improvement,' does not undermine a treating physician's opinion that their patient's

19   impairments render him unable to work." *Aaron S. v. Kijakazi,* Case No. 3:20-CV-768-SI, 2021 WL

20   3373791, at *5 (D. Or. Aug. 3, 2021) (quoting *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216

21   (E.D. Cal. 2017).  In his analyses of Dr. Kwok's, PT de Faria's, Dr. Ruo's, and Dr. Ligon's opinions,

22   the ALJ wrote that because Plaintiff's records indicated his condition was generally improving prior

23   to May 2018, and there was no indication of further treatment, Plaintiff's condition must have

24   continued to improve and the opinions indicating he is disabled therefore are unpersuasive.  AR 20

25   (finding Dr. Kwok's opinion was unpersuasive because, in part, "[t]he March and May 2018 progress

26

27   _____
     [4]      In response to Plaintiff's Motion, the Commissioner specifically addresses the supportability and consistency
     factors and provides citations to the record.  Unfortunately these are *ad hoc* rationales the Court cannot consider. *Stout*
28   *v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision
     denying benefits on a ground not invoked by the ALJ himself).

notes indicate improved standing and walking tolerance and claimant's declining use of a cane and walking laps"); (finding PT de Faria's opinion was "not fully persuasive" because "[t]he subsequent progress notes indicated improved standing and walking tolerance.  The claimant was trying to use his cane less often in May 2018 and walking four laps per day.  The lack of treatment/complaints after May 2018 suggests that the claimant had a normal course of healing and that symptoms were manageable without the need for medical intervention."); AR 21 (finding Dr. Ligon's and Dr. Ruo's opinions were not persuasive because "[t]he progress notes since March 2018 show improved symptoms, particularly with respect to walking tolerance.  The absence of complaints or medical treatment after May 2018 suggests a normal course of healing and that symptoms were manageable without the need for further medical visits.").  Because improvement alone does not establish lack of disability, the ALJ failed to provide a valid reason supporting the opinions unpersuasive.

Further, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Plaintiff's records demonstrate he repeatedly struggled to get treatment and ultimately stopped altogether in 2018 due to outside factors not because his condition had sufficiently improved.  Plaintiff has had long standing issues with homelessness.  AR 555 ("Living with friends but going from house to house"); AR 569 ("Doesn't have a home but sometimes stays at Grandmas house.  Sometimes stays at hotel.  Been doing this for 2-3 years."); AR 953 ("patient reports he is not sure where he will be living").  Plaintiff also frequently had issues with transportation to appointments because he relied on others for rides.  AR 555 ("Going to PT which is helping but has problem with transportation because he needs a ride"); AR 570 ("Gets ride from case worker. Usually gets ride from girlfriend. … No driver's license and doesn't own a car,"); AR 666 ("[D[ue] t[o] transportation dependence, p[atien]t unable to schedule other app[ointment]ts such as [occupational therapy] for [left] hand and wellness coaching for depression. P[atien]t would benefit from both."); AR 669 ("No longer able to drive per DMV"); AR 1680, 1700-01 (indicating at both hearings that he does not have a driver's license and relies on rides from others for transportation); AR 1687 (indicating transportation is a "big issue" in getting to appointments, and he stopped physical therapy because he could not obtain transportation).  Plaintiff also struggles with remaining medically insured.  AR

669 ("missed PT appts because he was 'under a rock' because his disability payments lapsed.  He

didn't realize that the disability paperwork completed at JMMC during his hospitalization only lasted

6 mo.  Here today to discuss renewal of disability."); AR 1703 (indicating he stopped going to

physical therapy due to loss of medical insurance coverage).  In his summary of fact, the ALJ

mentioned Plaintiff "is not attending physical therapy due to lack of coverage," (AR 18), and

"transportation was an issue" in attending physical therapy (AR 19).  Despite these facts, the ALJ

concluded, with no citation to evidence supporting his assumption or explanation, the sole reason

Plaintiff stopped treatment is because his condition must have continued to improve.  AR 20-21.

The ALJ then used this bald assumption as a basis to disregard Dr. Kwok's, PT de Faria's, Dr. Ruo's,

and Dr. Ligon's opinions.  This was harmful error as it impacted the ALJ's ultimate conclusion that

Plaintiff was not disabled.  *Shams v. Kijakazi*, Case No. 2:21-CV-01437 AC, 2023 WL 2636382, at

*4 (E.D. Cal. Mar. 24, 2023) (error is harmful when it has some consequence on the ultimate non-

disability determination).[5]

B.      ALJ's decision inappropriately relied on his lay opinion.

Plaintiff contends the ALJ's RFC assessment relied only on his own lay medical opinion in

reaching his conclusions.  ECF No. 19 at 18.  Defendant argues the ALJ's RFC differs from all the

medical opinions rendered because those opinions were based on data that ended in 2018, six months

after Plaintiff's accident, while the ALJ has the benefit of the passage of time that (albeit no medical

evidence) supposedly supported improvement.  ECF No. 21 at 15-16.

The ALJ may not substitute his own medical conclusions in the place of physicians'

expertise.  *Tackett v. Apfel*, 180 F.3d at 1102-03.  "[W]hen an ALJ rejects the expert opinions in the

record and instead relies on his own judgment in determining a claimant's RFC, the ALJ's decision

is unsupported by substantial evidence."  *Holtan v. Kijakazi*, Case No. 2:22-CV-01222-VCF, 2023

WL 2424648, at *3 (D. Nev. Mar. 9, 2023).  While the ALJ "can pick and choose between opinions

expressed by the experts," when an ALJ decides severity or residual functional capacity "without

the support of any of the medical opinion evidence," this is error.  *Id.*  In this case, the ALJ found all

---

[5]      Even if the ALJ had considered these circumstances when rendering his conclusions, the ALJ failed to "show his work."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (an ALJ is required to "show his work" when reaching his conclusions).

1    of the medical opinions regarding Plaintiff's physical impairments unpersuasive, instead interpreting

2    the raw medical data on his own accord and concluding that Plaintiff was disabled.  AR 20 (finding

3    Dr. Kwok's opinion unpersuasive); *id.* (finding PT de Faria's opinion "not fully persuasive" but

4    failing to note what parts of her opinion, if any, actually *were* persuasive); AR 21 (finding Dr. Ruo's

5    and Dr. Ligon's opinions unpersuasive).  Indeed, and related to the above, the ALJ cites on no

6    evidence other than his own unsupported opinion when reaching the conclusion that Plaintiff's

7    condition continued to improve.  In doing so, the ALJ reached beyond the purview of his decision

8    making power and, thus, erred.  The ALJ committed harmful error because the ALJ's decision to

9    forego all medical opinions' expertise, substituting his own interpretation instead, directly led to his

10   conclusion that Plaintiff was not disabled.  *Shams*, 2023 WL 2636382, at *4.

11                   C.       ALJ cherry-picked the record in rejecting incorporation of cane use in RFC.

12           Plaintiff argues the ALJ failed to cite specific evidence supporting the conclusion that

13   Plaintiff's cane use should not be included in the RFC.  ECF No. 23 at 3-4.  Defendant argues because

14   there was no medical evidence showing that Plaintiff required a cane after May 2018, and Plaintiff

15   was generally improving leading up to that point, the ALJ was justified in concluding that cane use

16   should not be incorporated into the RFC.  ECF No. 21 at 9.

17           "[D]istrict courts have found that the ALJ errs when [he] ignores evidence supporting or

18   consistent with a rejected medical opinion."  *Renee N. v. Kijakazi*, Case No. 6:20-cv-01131-SB, 2021

19   WL 4554475, at *9, n.5 (D. Or. Oct. 5, 2021) (collecting cases).  As such, "an ALJ must consider

20   all of the relevant evidence in the record and may not point to only those portions that bolster his

21   findings."  *Kristine S. R. v. Saul*, Case No. ED CV 19-1540-PLA, 2020 WL 3578048, at *8 (C.D.

22   Cal. June 30, 2020), *citing Holohan v. Massanari,* 246 F.3d 1195, 1207-08 (9th Cir. 2001).  The

23   "ALJs may not 'cherry-pick' from 'mixed results to support a denial of benefits.'"  *Leah K. v.*

24   *Comm'r of Soc. Sec.*, 616 F. Supp. 3d 1099, 1107 (D. Or. 2022) (quoting *Garrison v. Colvin*, 759

25   F.3d 995, 1014 n.23 (9th Cir. 2014).

26           Initially, the Court notes the ALJ failed to adequately address the claimant's cane use in the

27   first decision denying benefits.  AR 131.  On remand, the ALJ was instructed to "[g]ive further

28   consideration to the claimant's maximum residual capacity and provide appropriate rationale with

1    specific references to evidence of record in support of the assessed limitations. … Determine if the

2    claimant's cane usage is medically indicated and, if so, the effect it has on the claimant's residual

3    functional capacity."   AR 132.   In his final decision, the ALJ found that "[t]here is insufficient

4    evidence to support the need for a cane for any relevant 12-month period," because "[w]hile the

5    claimant benefited from an assistive ambulatory device while he recuperated from his gunshot

6    injuries, the treatment record shows that the claimant experienced improvement in standing and

7    walking tolerance by May 2018.  There are no treatment records after May 2018 to illustrate any

8    ongoing symptoms, including difficulties with ambulation." AR 20.  The ALJ therefore declined to

9    incorporate the use of a cane into the RFC. *Id.*

10         Contrary to the ALJ's findings, Plaintiff testified at the July 14, 2021 hearing that he still

11   used a cane for walking, and stopped seeking medical treatment because he lacked medical insurance

12   and transportation, not because his condition had improved.  AR 1702.  Even though this testimony

13   cuts against the ALJ's conclusions, the ALJ failed to articulate why this information was ignored

14   when reaching his conclusion.  AR 20.  In effect it appears the ALJ reached his conclusion regardless

15   of the instructions on remand and Plaintiff's testimony in order to reach the conclusion he wanted.

16         The Court finds the ALJ's analysis regarding Plaintiff's cane use was not supported by

17   substantial evidence and, therefore, was a harmful error contributing to the ALJ's conclusion that

18   Plaintiff was not disabled. *Shams*, 2023 WL 2636382, at *4.

19   **VI.    Order**

20         Accordingly, the Court having found reversible harmful error, IT IS HEREBY ORDERED

21   that Plaintiff's Motion for Reversal and Remand (ECF No. 19) is GRANTED.

22         IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 21) is

23   DENIED.

24

25

26

27

28

1    IT IS FURTHER ORDERED that this matter is remanded for further administrative action

2  pursuant to the Social Security Act § 205(g), as amended, 42 U.S.C. § 405(g), sentence four.  On

3  remand, the Appeals Council will remand the case to an administrative law judge for a new decision.

4    DATED this 4th day of January, 2024.

5

6    _____

7    ELAYNA J. YOUCHAH
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28